Okay, we're going to go ahead and proceed with the 11 o'clock case, which is 514-0149, People v. Stone. And Ms. Ward and Mr. Stewart, did you hear the explanation for Justice Moore not being here today? I did. Okay. Jesse White and Steve Stone on the docket this morning. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. When they brought the motion to vacate, it was 61 days after they had been served with the expungement order, and that is too late under Section 5.D12 of the Criminal Identification Code. When the motion and the memo in support to vacate cited incorrectly in a sense to 5.2D12, but in the memo in support, it also cited to this Court's decision in Wakeland as arguing that the order was indeed vacating. Excuse me. It was void because expungement is statutory, and the circuit court didn't have the authority to expunge his arrest because he didn't qualify under the Criminal Identification Act, and the petition didn't say anything about his earlier arrest. So that was ISP's argument is that the order was void under Wakefield and that they could bring that motion to vacate. Under Rule 2.1401F of the Code of Civil Procedure, you can move to vacate a void order at any time. So that's what they were arguing they did, and that the circuit court should not have dismissed their motion. So, I mean, it's pretty straightforward. That's what ISP contended below. That's what they're contending here, and we're asking you to reverse the order dismissing their motion to vacate as void. And the alternative, we ask that we remand so that we can have a hearing under 2.1401C. If it was void, it was at least voidable, and in that case, ISP is entitled to a hearing to explain. I mean, obviously, they have a meritorious defense. I mean, nobody questions that the order never should be—the expungement order was wrong. It should not have been entered because he didn't qualify for it. And so then they would like to be able to make a showing that they used diligence, and that's what—even using diligence, they were a day late. But the 2.1401C, you're going to have to meet the burden of due diligence, correct? Correct. Have you read the case that was just issued by the Illinois Supreme Court on void and voidable orders? I did. And, in fact, I—at first glance, I thought, no, I need to file a motion for supplemental authority. And I actually spoke with some colleagues about this, and one of the things they asked me, well, does this really change anything in terms of the expungement order? And I finally decided, really, no, because that law was already out there. I mean, at the time this court decided Wakefield, I think there was already, what is it, a Toyota Belleville— Yes, it was a case that— Yeah, Belleville Toyota Motor Sales. It basically said the same thing. But that part of Belleville Toyota Motor Sales was reversed, in that opinion. Well— I'm concerned. I'm going to have to look at this myself. I'm concerned about this new case because it—I don't have a name for it. I'm sorry. No, I have it right here. It's— You could have stained it for the record. Yeah, it's—I can tell you what it is. It's LVNV Funding. That's right. LVNV Funding. Right, versus Trice, and that was at 2015 Illinois 116-129. What I'd like to do, though, is I'd like to give each side the opportunity to address the LVNV Funding case and, within 14 days, if you can, supplement your briefs, if you believe they need to be supplemented, or you can just write a letter saying, no, I'm not going to supplement. But I think for the benefit of the court, we should have some input on this LVNV Funding case, as it relates to your motion, especially because you're arguing the 1401 voidness. Correct. Void versus voidable doctrine. And I think the court deals with this. And since the court has reversed itself in at least a piece of the Belleville Toyota case, we should give you the opportunity to address that. So I know how you feel, but I don't want to give the other side an unfair opportunity. So if I've interrupted your argument, I apologize. No, that's fine. I'm happy to address that in a brief. I mean, and I think I'm back in just short, in a very short term state, and I can say what I think is either, I mean, what we will put in our brief is either expungement, because it's quasi-criminal, and that it has criminal ramifications, so it should be treated somewhat different than other civil cases. And then in that case, it would be more like, what is it, I think it's people versus honor. Under criminal law, like with criminal sentencing, if the sentence is outside statutory authority, it is void. So the only way that expungement, honestly, I think will fit is if its quasi-criminal nature can be considered different from LB&V. But like I said, I'm happy to address that in a supplemental briefing, because I think that's really the key. It's either completely civil, and then I think it would fall under LB&V, and really cases even before that. But I think in Wakefield, this Court recognized, I think it's in paragraph 6, that the criminal ramifications of expungement, that the point of records, criminal records, is partly, you know, it's discussing recidivism, second offender status, that kind of stuff. But if the state police don't notice, why didn't they hear? Why didn't they object? Well, that's a good question. We see them a lot. I understand that. I mean, did they say, oh, we've got all the time we want under Wakefield, so. You know, I think one of the reasons that I'm an appellate attorney is that I think when I talk to some of my colleagues that are trial attorneys, and things move so much faster, and they have so many deadlines, they just miss them a lot. And that's all I can say. I mean, like I said, I would like them to have the opportunity to have a hearing to address diligence. But I think, clearly, I think the record in this case shows that when people are busy, they make mistakes. Okay. Thank you. I'll do my best to be done by 12. Okay. Hello. My name is Greg Stewart. I'm with Conrad Alley & Carbide. I represent Steve Stone, who is the appellee in this proceeding. You will see in the briefs various references to dates. I'm not going to bore you with dates. That'll just fly by. This is a very straightforward proceeding in which Mr. Stone filed a petition to expunge or seal his arrest record. The circuit clerk of White County, Illinois, gave the required notice under the Criminal Identification Act to the arresting authority, which was the White County Sheriff, to the prosecuting authority, which was the White County State's attorney, and to the Illinois Department of State Police, the notices of record. I waited way past 60 days for objection and came into the court about 90-some days after the petition was filed. And moved the court, pursuant to the petition, to grant an order of expungement. And the court granted it based upon the petition as filed. We gave notice to all of the interested parties that I noted before of the entry of the order. That's when the fun began. This is to address your question, Justice Cates, about why didn't the state police object? Let's look at the motion to vacate. The motion to vacate, which we have quoted in our brief, and if you'll turn to page 4 of my brief, you'll see where the fun began. Look at the middle of page 4. This is paragraph 17 of the Department's motion to vacate. Here the Department of State Police filed an objection on July 3rd. July 3rd would have been within the 60 day. So the first thing that the judge did, sitting in Carmine, White County, was to say, wait a minute. Department, I don't see an objection in the file. What's going on here? The department came back and said, well, we, in fact, didn't file an objection. We're sorry. We made a mistake. That can be found at the record at C69, as cited in our brief, beginning on the top of page 5. So after we overcame that hurdle, we then moved on to the motion to vacate itself. And the motion to vacate is very specific. It said it was filed pursuant to the relevant section D12 of the act. That act is 60 days after the entry of the order to make your objection. The department has indicated it missed that deadline. Didn't file the objection timely, but it says, well, wait a minute. Under the Sarkissian case, don't look at what we define it to be. Look at the content of our motion. Well, let's go back to page 4 of my brief. Let's look at the content of what the department said. The department specifically cites the section D12 within the body of its motion and says, we are filing here today a timely motion to vacate pursuant to that section. It goes through the timeline. It wasn't a 214.01 motion, and I presented to the court on a 214.01 motion. What should that lady do? It's a new proceeding. You serve all the interested parties. They did not serve the white county state's attorney, nor did they serve the white county sheriff. And there's two timelines that you do within the Criminal Identification Act once an expungement order is entered. The department either expunges the records within 60 days or it objects. So the records should have already been expunged, but we get a motion that's filed. Now the argument is made that, well, it's a 214.01 motion, and it's because it was void. Well, I'll add another case to the new one. This is a case that I did that came before this court on a statutory enactment where there was a very long discussion of void versus voidable orders in Rand Marriage of Bagot, a Mike Henshaw case from Swing County. That case involved a situation where there was a child support order that was entered on a percentage basis. At the time that order was entered, the law was very clear. Child support orders would be set in the court order on a set $11 amount, not a percentage. Case came to this court, long discussion in Bagot about void versus voidable orders, and the bottom line was this. Does a court have jurisdiction to enter a child support order? Yes. That does not make it void. In this case, does the court have jurisdiction to enter an expungement or seal order? Absolutely. It's not a question. Does the court have jurisdiction to enter an expungement order where an individual has a DUI? The court has the jurisdiction to enter an expungement order based upon the record before. That wasn't my question. Does the court have the authority to enter an expungement order where the individual seeking the expungement has a DUI? I say the answer to that based upon the record would be yes. What do you mean based upon the record? The judge in the court can only decide the cases based on the facts before. Did you notify the court in your petition to expunge that your client had a DUI? My client signed a verified petition which set forth the facts of the case. I was not aware of any other facts involving Mr. Stone other than what were in the petition. So what you're telling me is no, you didn't tell the court that there was a DUI. Because I did not know about it. So your client lied, basically. I don't know what was in my client's mind to comment. Well, let me rephrase. Your client signed an affidavit or some kind of attestation that was incorrect. Because it led the court to believe that your client did not have a DUI. And there's a procedure. Again, I can't get into my client's mind, but there's an allegation now that he does not fit the parameters of expungement because he had a prior DUI. Let me ask this. Did your client have a DUI at the time? Have you now learned that your client had a DUI when you filed the petition? I have not reviewed. I did not do criminal law. I do civil law. I have never reviewed his criminal record. Never. I relied upon what he told me his criminal record was. The state police say it is something different. So you've seen their papers that say he has a DUI. I have seen those papers. I have seen those allegations. Hypothetically, would you agree that the expungement statute would not allow your client, should he have a DUI, to have his record expunged? If he had a conviction for DUI which fell within the definitions of the act, the answer to your question is yes. You know, if we follow Wakefield, and it must be kind of disappointing to see that the author of Wakefield and one of the concurring judges are sitting here today. If we follow Wakefield, you've got a pretty tough hurdle here. You agree with that, don't you? I have read Wakefield. I understand Wakefield. But I don't think we're to the point of Wakefield because this motion is not a 2-1401 motion. It was a motion to vacate under D-12. It really wouldn't matter very much under Wakefield. Let's say they lose. Can't they go in and file another 2-1401 under Wakefield? That presumes they might do so, and with the department and the way that they do things, I can't presume it. Because we had a situation with this. They filed the notice of appeal in the wrong court. You know, there seems to be a lot of inaccuracies here because it's a little disconcerting that the lawyer standing in front of me has filed a petition to vacate when you acknowledge that a DUI cannot be expunged. And you say it is your excuse that you didn't check your client's record. So whether they filed in the wrong court or whether, I mean, there's a lot of blame game going on here, and yet I really question how you can file a pleading before a judge and not have checked the client's background. Well, if we're going to speculate, let's speculate Mr. Stone. I'm not speculating. Well, let's speculate Mr. Stone is from Illinois. They've got a DUI in court. And? How am I supposed to know that? Are you aware of running a records check with the Illinois State Police? Am I qualified? It's not our place to argue with you. I understand that, but I see I'm being challenged on something that maybe I should have done, which I don't think that I am required to do. I'm not arguing or accusing. I promise you that. I'm just saying that I hear you saying they filed in the wrong court. As Justice Stewart said, it must be disappointing that you're appearing here on the same issue in Wakefield. You relied on what your client told you. I relied on what my client told me. And you're entitled to do that, I think. And we agree with that. As long as we're understood on that, I think we'll get past it. Did you have anything more you wanted to add, though? Really not at this point. I think that the record is clear. I think that the briefing has done it. I've given you the Baggett case, which you can look up where they've done all that. Did you cite that in your brief? I did not because when you brought up the issue of Void v. Voidable, it brought to my mind this case that I directly participated in. If you would like for me in a letter form to give you that citation, it's easy to do that. Can you just spell the last name? B-A-G-G-E-T-T. It should be a case decided in the late 90s. It was an appeal from Judge Mike Henshaw. Okay. Void v. Voidable orders on a statutory case being the Illinois Marriages and Dissolution of Marriage Act. Thank you very much for your time. Thank you. And I thank you for that case. And it's usually the custom that when a new case is introduced at the oral argument, we give the other side the opportunity to make some response to that. So I will include within our 14-day order that if either of you would like to make mention of the applicability of in-ring marriage at Baggett, you should do so as well. Thank you. You may proceed. I won't go up here again, but I'll get the site after. You should have spoken up. Just the in-ring marriage up is what I mean. Okay. Did you get the spelling of the name? I didn't, but I can check with him after the argument. And that's the first problem. In his brief, there were no sites to any of these cases. Wakefield, the whole void versus voidable issue. So otherwise, I would have been happy to have expounded on it more than I did in my brief library. And I just want to reiterate, I think that should Wakefield stand, it's going to be, as I said, on the quasi-criminal aspect of this case. That a mistake that somebody convicted of a crime is later not sentenced as a repeat offender or something like that because the offense expungement was improper. The petitioner in this case didn't disclose his DWI. His sentence for that had only run not even a year before he filed this petition. So I don't think it was probably out of his recollection that that had happened, the DWI. And on that same issue, the sealing, in addition to the expungement of the arrest record, he also had his record sealed. And that, too, was inappropriate because he was sentenced under the Controlled Substance Act, Section 1. And I have a slide here somewhere. An arrest resulting in an order of first offender probation under Section 410 of the Illinois Controlled Substance Act can only be sealed four years after termination of the petitioner's last sentence. And that's under Section 5.2C2E and 5.2C3C of the Criminal Identification Act. And in this case, his DWI conditional sentence didn't terminate until June 19, 2012. And he received his order of first offender probation for the possession charge. So his record should not have been sealed even until June 2016. So his order was also inappropriate under the sealing portion as well as under the expungement portion. So unless you have any other questions, I think that's it. No. Thank you very much. Thank you both. Okay. This matter will be taken under advisement and an order will be issued, of course, and thank you both. Appreciate it. Is that enough time for you or would you prefer Mr. Stewart? Fourteen days is sufficient for me. And, you know, when we say briefs, these don't need covers or, you know, this is just a supplemental argument. Well, I mean, you know, you probably want to file like a pleading, some sort of just supplemental argument, but don't send it off to the binders. Thank you both.